**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TAMEER PEAK,<br><br>Plaintiff,<br><br>v.<br><br>ONIKA TANYA MARAJ-PETTY p/k/a NICKI MINAJ, PINK PERSONALITY INC., and PEDRO VELAZQUEZ,<br><br>Defendants. | Case No. 2:24-cv-09684 (BRM) (JBC)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Onika Tanya Maraj-Petty p/k/a Nicki Minaj ("Maraj-Petty") and Pink Personality, Inc.'s ("Pink Personality") (collectively, "Moving Defendants")[1] Motion to Dismiss *pro se* Plaintiff Tameer Peak's ("Plaintiff") Amended Complaint (ECF No. 7) pursuant to Federal Rules of Civil Procedure 12(c),[2] or, alternatively, to Transfer pursuant to 28 U.S.C. § 1406(a) (ECF No. 24). Plaintiff filed an Opposition (ECF Nos. 27, 28), and Moving Defendants filed a Reply (ECF No. 29).[3] Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule

---

[1] Plaintiff also makes allegations against Pedro Velazquez ("Velazquez"), however, as of the date of this Opinion, Velazquez has not been served yet and is not a party to this Motion to Dismiss. (*See* ECF No. 7.) For the purposes of this Opinion, "Defendants" includes Velazquez since Maraj-Petty and Pink Personality are known here as the "Moving Defendants."

[2] Defendants filed an Answer on December 24, 2022. (ECF No. 11.)

[3] Plaintiff filed an impermissible sur-reply that the Court will consider in light of his *pro se* status. (ECF No. 30.)

of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Moving Defendants' Motion to Dismiss is **GRANTED**.

I.    BACKGROUND

"The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6) motion." *Newton v. Greenwich Twp.*, Civ. A. No. 12-238, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). Therefore, for the purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

A.    **The Parties**

Plaintiff is a "private citizen of the state of New Jersey domiciled in the city of Newark." (ECF No. 7 ¶ 2.) Maraj-Petty is a public figure, songwriter, and performer. (*See* ECF No. 24 at 12.) Maraj-Petty is "citizen of the state of California domiciled in Los Angeles." (ECF No. 7 ¶ 3.) She "has a significant social media presence and influence, with millions of followers across various platforms." (*Id.*) Pink Personality is a corporation, incorporated in California with its principal place of business in Los Angeles, serving as Maraj-Petty's "business entity." (*Id.* ¶ 5.) Upon information and belief of the Plaintiff, Velazquez "is a citizen of Illinois domiciled in Chicago" Illinois and is "employed by [Maraj-Petty] as a fan liaison or 'social media manager' as described by Velazquez himself." (*Id.* ¶ 4.)

### B.    Factual Background

Plaintiff is a self-proclaimed "loyal" "fan and supporter of [Maraj-Petty], since 2009; spending tens of thousands of dollars supporting [Maraj-Petty]'s career and participating in fan activities." (*Id.* ¶¶ 8, 11.) Plaintiff alleges he first became personally acquainted with Maraj-Petty around 2018. (*Id.* ¶ 9.) The acquaintanceship consisted of "direct interactions" between the parties, both online and in person. (*Id.* ¶¶ 8, 37.) Plaintiff alleges part of the relationship was Maraj-Petty "using Plaintiff's work without permission to promote her singles and tour." (*Id.* ¶ 9.) Plaintiff states between 2017 and 2019, Maraj-Petty experienced a period she has referred to as the "Nicki hate train," but Plaintiff remained a loyal fan. (*Id.* ¶¶ 8–9.) Plaintiff alleges this is important context because, by 2024, Maraj-Petty and Velazquez "began accusing fans, including Plaintiff, of being '*paid moles*' sent to undermine and sabotage [Maraj-Petty], which marks the start of her baseless and defamatory allegations against Plaintiff." (*Id.* ¶ 11.) Plaintiff claims "he has never been paid to sabotage Defendants[,]" nor has he ever "been paid in relation to Defendants at all, including the help Plaintiff provided for [Maraj-Petty]'s multiple commercial projects." (*Id.* ¶¶ 11–12.) Plaintiff states Maraj-Petty has "engaged in conduct that publicly humiliated" him on multiple occasions. (*Id.* ¶ 14.) Plaintiff alleges that during Super Bowl weekend in 2020, he attended several events by Maraj-Petty and was physically confronted by her husband. (*Id.* ¶ 15.) Plaintiff asserts this incident was referenced by Maraj-Petty in a direct message ("DM") sent to him on August 14, 2021, where she stated, "U was the one in the club that I had to hold the guys from being rough with u right? Cuz that's how I love & protect my fans. Online y'all b so tough. I got u tho." (*Id.*) Plaintiff claims this implied "her intention to target Plaintiff as a result of his online interactions, suggesting a retaliatory motive." (*Id.*) Although not part of his current lawsuit, Plaintiff alleges he

was humiliated in October 2021 by Maraj-Petty, which "reflects [Maraj-Petty's] pattern of behavior toward Plaintiff." (*Id.* ¶ 14.)

On March 1, 2024, Plaintiff states Velazquez used social media to threaten to kick Plaintiff out of Maraj-Petty's upcoming concert. (*Id.* ¶ 16.) On March 3, 2024, Plaintiff alleges he was "singled out and removed from the venue for allegedly livestreaming, despite numerous other attendees also broadcasting the concert. This incident occurred while Plaintiff was actively streaming, leading to widespread reactions online." (*Id.* ¶ 17.) Plaintiff claims "[a]s a result, [his] name, 'Tameer,' quickly became a trending topic on X (formerly Twitter), with many users discussing the event in real-time. (*Id.* ¶ 17.) Plaintiff is not suing over this "targeted removal," but states the incident "exemplifies ongoing public targeting of" him and is referenced by Maraj-Petty "in subsequent defamatory remarks." Plaintiff contends Maraj-Petty acknowledged the incident on a public broadcast on March 15, 2024, when she said "Tameer know he not even supposed to be let back in the motherfucking palace if we really wanna get technical." (*Id.* ¶ 43.) After his removal, Plaintiff alleges a DM was sent by Velazquez to one of his friends, which Plaintiff then responded to Velazquez directly to address, and states such an "exchange highlights the unprovoked personal attacks directed toward Plaintiff from those associated with [Maraj-Petty], escalating from social media harassment to direct insults and public spectacles, further contributing to Plaintiff's distress." (*Id.* ¶ 17.)

Subsequent to the removal incident, Plaintiff claims Maraj-Petty and Velazquez referenced him multiple times on social media and other media outlets, such as radio shows, which forms the basis of this lawsuit as he contends such statements were "defamatory allegations against Plaintiff." (*Id.* ¶¶ 11, 16–17, 22–29.) Plaintiff asserts Maraj-Petty made "comments [that] were clearly intended to denigrate Plaintiff in front of others, damaging his reputation within the fan

community." (*Id.* ¶ 27.) Plaintiff also alleges the public comments made by Maraj-Petty "were indirect but unmistakably targeted comments about [him]. (*Id.* ¶ 28.) As a result of these indirect comments and "history of conflict [between Maraj-Petty and Plaintiff]," Plaintiff claims Maraj-Petty's fanbase "quickly identified [him] based on the context of these [public] broadcasts" as well as claims his name "was directly mentioned in the [broadcast] comments" by the fans. (*Id.* ¶¶ 40–43.)

On April 22, 2024, Plaintiff states "[Maraj-Petty] had made disparaging remarks about Plaintiff [on Instagram]." (*Id.* ¶ 27.) Later that day, Maraj-Petty "posted on Twitter, promoting a Stationhead session where she made indirect but unmistakably targeted comments about Plaintiff," insinuating "Plaintiff is mentally unstable or intellectually deficient." (*Id.* ¶ 28.) On May 21, 2024, Plaintiff alleges he was again referenced indirectly and characterized by Maraj-Petty as intellectually deficient after Maraj-Petty commented on a public broadcast implying Plaintiff was "one sandwich short of a picnic" and "falsely asserting that [Plaintiff] 'clearly [gets] a check [from] the government.'" (*Id.* ¶ 29.) Plaintiff asserts, "he has never received government assistance for a disability, nor has he been diagnosed with any mental illness as [Maraj-Petty] suggest[s]," and her "statements carried a clear implication of fact and were made to a wide audience, causing substantial reputational harm." (*Id.* ¶¶ 30–31.) Plaintiff asserts Maraj-Petty "was aware of the harmful, provocative nature of her statements and that they were presented as facts, not opinions." (*Id.* ¶ 32.) On July 20, 2024, Plaintiff claims Maraj-Petty publicly and "falsely accus[ed] [him] of being a 'stalker' and of 'impersonating' members of her team" to a "large audience." (*Id.* ¶ 33.) Plaintiff states he "is not, and has never been, a stalker nor did he impersonate anyone from her team." Plaintiff emphasizes this when asserting he "has previously coordinated with [Maraj-

Petty's] security detail on various occasions to ensure her safety, contradicting the false claims that he poses a threat, as the term '*stalker*' would suggest." (*Id.* ¶ 41.)

Plaintiff maintains even though he was not "explicitly nam[ed]" in the statements, given the "context . . . which referenced specific events and interactions known to her fanbase and the general public, [they] clearly pointed toward Plaintiff. The widespread public reaction, including media coverage and social media discussions, demonstrates that a reasonable listener would understand [Maraj-Petty's] comments to be about Plaintiff." (*Id.* ¶ 38.) Plaintiff alleges Maraj-Petty's "status as a public figure and the significant influence she holds over her fanbase amplified the harm caused by these statements" and that further repeatedly targeted by her fanbase, which further prov[es] that the public understood the defamatory statements to be about Plaintiff." (*Id.* ¶¶ 38–39.) Plaintiff further states Velazquez "has continued to publicly defame [him]" on multiple occasions, accusing Plaintiff of "bribery[]" in filing this lawsuit as part of a "conspiracy to sabotage [Maraj-Petty]." (*Id.* ¶ 47). Plaintiff claims Maraj-Petty's and Velazquez's public accusations "that Plaintiff was a 'paid mole' seeking to sabotage [Maraj-Petty]" "incited and encouraged her fanbase to harass and threaten Plaintiff" (*id.* ¶ 74), led to Maraj-Petty's followers "sending death threats, delivering suspicious packages to Plaintiff's home, and resurfacing out-of-context social media posts to portray Plaintiff as a pedophile falsely" (*id.* ¶ 48).

On October 18, 2024, Plaintiff filed an Amended Complaint against Defendants, alleging: (1) statements made on April 22, 2024, May 21, 2024, and July 20, 2024 by Maraj-Petty constitute Libel Per Se (Count I); (2) the statement made on July 20, 2024 by Maraj-Petty constitutes Slander Per Se (Count II); (3) Invasion of Privacy—False Light against all three Defendants (Count III); (4) Intentional Infliction of Emotional Distress by Maraj-Petty (Count IV); (5) Negligence by Maraj-Petty (Count V); and (6) Vicarious Liability (Count VI). (*Id.*)

### C.    Procedural Background

On October 9, 2024, Plaintiff filed his complaint. (*See generally* ECF No. 1.) On October 16, 2024, the Court ordered Plaintiff to file an Amended Complaint sufficiently setting forth the basis of this Court's jurisdiction. (ECF No. 4.) On October 18, 2024, Plaintiff filed his Amended Complaint. (ECF No. 7.) On December 24, 2024, Moving Defendants answered the Amended Complaint. (ECF No. 11.) That same day, Plaintiff filed an improper reply in opposition to the Answer. (ECF No. 13.) On December 30, 2024, Plaintiff filed a Motion for Alternative Service of Process on Velazquez. (ECF No. 15.) On February 20, 2025, Moving Defendants filed a Motion to Dismiss for: "(i) lack of personal jurisdiction, (ii) improper venue, and/or (iii) failure to state a claim," or to Alternatively Transfer. (ECF No. 24.) On March 2, 2025, Plaintiff filed an Opposition (ECF Nos. 27, 28), and, on March 10, 2025, Moving Defendants filed a Reply (ECF No. 29). On March 11, 2025, Plaintiff filed a Sur-Reply without permission of the Court. (ECF No. 30.) On June 12, 2025, Magistrate Judge James B. Clark denied Plaintiff's Motion for Alternative Service of Process. (ECF No. 34.)

## II.    LEGAL STANDARD

### A.  Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). In resolving a motion made pursuant to Rule 12(c),

the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See id.*

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, Civ. A. No. 12-7206, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014) (citing *Turbe,* 938 F.2d at 428) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim."); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014). "The difference between Rules 12(b)(6) and 12(c) is purely procedural as [Rule] 12(c) requests for dismissal are governed by the same standards as [Rule] 12(b)(6) motions." *Glob. Naps, Inc. v. Bell Atl.-N.J., Inc.*, 287 F. Supp. 2d 532, 539 (D.N.J. 2003) (citing *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). As with a Rule 12(b)(6) motion, in deciding a Rule 12(c) motion, the court must "view[] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the" nonmovant. *Barnard v. Lackawanna Cnty.*, 696 F. App'x 59, 61 (3d Cir. 2017) (internal quotation marks and citations omitted). A court may only grant a motion for judgment on the pleadings if the moving party "clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).

### B. Personal Jurisdiction

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86–87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance*

*Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). "In reviewing a motion to dismiss for lack of personal jurisdiction, a court 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Smith v. Zimmer US, Inc.*, Civ. A. No. 19-06863, 2020 WL 487029, at *1 (D.N.J. Jan. 29, 2020) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). "But when a defendant raises a jurisdictional defense, 'a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper.'" *Id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "New Jersey's long arm jurisdiction permits the assertion of *in personam* jurisdiction as far as is constitutionally permissible under the Fourteenth Amendment." *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996) (citing N.J. Court Rule, 4:4–4; *Apollo Technologies Corp. v. Centrosphere Indus. Corp.,* 805 F. Supp. 1157, 1181 (D.N.J.1992)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction requires continuous and systematic contacts and exists in "situations where a foreign corporation's

'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Int'l Shoe Co.*, 326 U.S. at 317. While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Ops.*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*." (emphasis added)). "It may be that whatever special rule exists permitting 'continuous and systematic' contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610 n.1 (1990) (citations omitted).

Specific jurisdiction, however, may be established over a defendant who "has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citations omitted). More specifically, specific jurisdiction requires: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquisition, LLC v. Multi-Media, LLC*, Civ. A. No. 14-01661, 2015 WL 5310203, at

*12 (D.N.J. Sept. 10, 2015) (citation omitted); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (stating "what is necessary [for specific jurisdiction] is a deliberate targeting of the forum" (citation omitted)).

A court's exercise of personal jurisdiction "requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co.*, 326 U.S. at 316); *see also O'Connor*, 496 F.3d at 316–23 (discussing the three-step process to determine personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants." *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007). Rather, "[j]urisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Moreover, "the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1255 (N.J. 1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at

297–98). Indeed, the three-part inquiry is meant to ensure that an out-of-state defendant will not

be haled into court based on "random, fortuitous, or attenuated contacts, or the unilateral activity

of another party or a third person[.]" *Croat v. Mission Fine Wines, Inc.*, Civ. A. No. 19-17786,

2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (quoting *Stevens v. Welch*, Civ. A. No. 10-03928,

2011 WL 541808, at *3 (D.N.J. Feb. 7, 2011)). The plaintiff "bears the burden of demonstrating

[that] contacts with the forum state [are] sufficient to give the court *in personam* jurisdiction."

*Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (alterations in original) (quoting

*Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

## III.   DECISION

Moving Defendants argue Plaintiff has failed to meet his burden in sufficiently alleging

facts that would allow this court to exercise personal jurisdiction over them. (ECF No. 24-1 at 5.)

They claim Plaintiff's Amended Complaint "does not allege facts remotely sufficient to support

general jurisdiction over [Moving] Defendants" and the "lone allegation to support specific

personal jurisdiction over [Moving] Defendants is that Plaintiff lives in New Jersey and was

consequently harmed in the forum." (*Id.* at 6–7.) Moving Defendants state that, "[a]part from

Plaintiff's alleged exclusion from a March 3, 2024, concert in Denver, all of the complained-of

conduct consists of statements allegedly made by Maraj-Petty and co-Defendant [] Velazquez on

social media outlets which are incorporated and maintain their principal places of business outside

of New Jersey." (*Id.* at 6.) Moving Defendants contend that although Plaintiff claims the Court has

personal jurisdiction "'because the harm and effects of [Moving] Defendants' actions were felt by

Plaintiff in New Jersey, where Plaintiff resides[,]' . . . [t]his allegation is inadequate to support a

claim of general jurisdiction over [Moving] Defendants because it does not claim that [Moving]

Defendants engaged in 'continuous and systematic contacts' in New Jersey." (*Id.* at 6 (quoting

ECF No. 7 ¶ 7); *id.* at 6 (citing *Rosa v. X Corp.*, Civ. A. No. 2:23-cv-22908, 2024 WL 4903619, at *3 (D.N.J. Nov. 27, 2024).)

Likewise, Moving Defendants assert Plaintiff has failed to allege specific jurisdiction because "the Supreme Court of the United States has held that 'mere injury to a forum resident is not a sufficient connection to the forum.'" (*Id.* at 7 (quoting *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 707 (E.D. Pa. 2023)) (quoting *Walden v. Fiore,* 571 U.S. 277, 290 (2014)).) In this vein, Moving Defendants claim Plaintiff's pre-motion letter relying on *Calder v. Jones*, 465 U.S. 783 (1984), is of no assistance here because the "effects test" is to be construed narrowly and "[i]f a plaintiff fails to show that the defendant manifest[ed] behavior intentionally targeted at and focused on the forum, [as Moving Defendants allege is true here,] the[n] [the] plaintiff fails to establish jurisdiction under the effects test[.]" (*Id.* at 7–8 (quoting *Marten*, 499 F.3d at 298).) Accordingly, Moving Defendants state Plaintiff "fails to plausibly allege that Moving Defendants expressly aimed their alleged tortious conduct towards New Jersey, thereby failing to satisfy the third prong of the effects test" since "the [Amended] Complaint merely alleges that Moving Defendants published the allegedly defamatory statements on general social media platforms with no special ties to New Jersey." (*Id.* at 8.) Moving Defendants claim "[t]he only connection between Plaintiff's defamation claim and the forum is the fortuity that he lives in New Jersey. 'However, the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants.'" (*Id.* at 9 (quoting *Marten*, 499 F.3d at 298).) Finally, Moving Defendants argue in the alternative that if the Court finds there to be personal jurisdiction, the Court should dismiss or transfer the case for improper venue, or, alternatively, dismiss the case for failure to state a claim. (*Id.* at 9, 13, 25, 32, 34.)

In opposition, Plaintiff generally claims Moving Defendants are "attempt[ing] to evade liability through procedural maneuvers rather than addressing the merits of this case. However, the law and facts demonstrate that [Moving] Defendants' motion is without merit, and it should be denied in its entirety." (ECF No. 27 at 1.) He argues "jurisdiction is proper in New Jersey because Moving Defendants intentionally targeted Plaintiff, a New Jersey resident, causing direct harm within this forum." (*Id.*) As support for this contention, Plaintiff states, "Maraj-Petty used a globally accessible platform to falsely portray Plaintiff as a mentally unstable threat, knowing full well that Plaintiff resides in New Jersey" as well as asserting "Maraj-Petty's fans—acting on her directives—have doxed Plaintiff, harassed, threatened physical harm to him and his family, and sent packages to his home in New Jersey." (*Id.* at 2.) Plaintiff insists venue is proper because his harm was suffered in New Jersey and the statements alleged are actionable defamation. (*Id.* at 2–3.)

In reply, Moving Defendants first emphasize that Plaintiff's Opposition is "notable for its failure to respond to, or even acknowledge, multiple dispositive arguments that [Moving] Defendants raised in their moving papers." (ECF No. 29 at 1.) They state any attempt to address their arguments are "wholly inadequate" and full of "conclusory legal arguments . . . for which he provides no foundation." (*Id.*) Moving Defendants reassert Plaintiff has failed to show the Court has personal jurisdiction over them despite Plaintiff arguing "online defamation directed at a plaintiff in a specific forum establishes jurisdiction." (*Id.* at 3 (quoting ECF No. 27 at 2) (citing *Calder*, 465 U.S. 783).) Moving Defendants claim, "the Third Circuit conclusively demonstrat[ed] that Plaintiff's contention that the Court has personal jurisdiction over [Moving] Defendants based solely on his residence in New Jersey and allegedly suffered harm in the forum fails as a matter of law." (*Id.* at 4 (citing *Marten v. Godwin*, 499 F.3d at 298; *Remick v. Manfredy*, 238 F.3d 248, 259

(3d Cir. 2001); *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998)).) Moving Defendants state, "to the extent that Plaintiff is arguing that [Moving] Defendants knew that Plaintiff resided in New Jersey and somehow targeted their allegedly defamatory statements specifically at him in this District over any other forum, the [Amended] Complaint contains no such allegation." (*Id.* at 4.) Moving Defendants characterize Plaintiff's response as "merely a conclusory allegation . . . not a plausible inference based on factual allegation." (*Id.* at 4–5.) They state neither the Amended Complaint nor Plaintiff's Opposition "contain any factual allegations that could give rise to a plausible inference that [Moving] Defendants knew that Plaintiff resides in New Jersey, let alone targeted him in this District over any other forum via the generally accessible social media broadcasts through which they published the allegedly defamatory statements." (*Id.*) As support for this assertion, Moving Defendants highlight Plaintiff's own response as stating a "globally accessible platform" was used to defame him, which means there is no "nexus between the allegedly defamatory statements and the District of New Jersey because the statements are available on a 'globally accessible platform' which could just as easily be accessed in California (or Dublin, Ireland) as New Jersey." (*Id.* at 5 (citing ECF No. 27 at 2); *id.* (citing *Marks v. Alfa Group*, 369 F. App'x 368, 370–71 (3d Cir. 2010)).) Moving Defendants also argue Plaintiff has failed to adequately respond to Moving Defendants' showing that the Court should dismiss or transfer the case for improper venue. (*Id.* at 8.) Likewise, Moving Defendants claim Plaintiff has failed to properly rebut their arguments that the alleged statements are not defamatory as a matter of law. (*Id.* at 10.)

   Plaintiff submitted an impermissible sur-reply (ECF No. 30), but the Court has reviewed and considered it given his *pro se* status. Plaintiff alleges Moving "Defendants' reply memorandum is replete with mischaracterizations of the record, misapplications of law, and

improper attempts to evade accountability." (*Id.* at 1.) He claims he has responded to all relevant dispositive arguments; personal jurisdiction is proper; venue is proper in New Jersey or alternatively New York; and Moving Defendants' statements are actionable defamation. (*See generally id.*) Plaintiff also asserts that Moving Defendants' argument that Maraj-Petty was unaware of his being a resident of New Jersey is "demonstrably untrue" because "[o]n August 26, 2022, outside of the Prudential Center in Newark, New Jersey, Plaintiff personally informed Maraj-Petty that he lived in New Jersey when she asked Plaintiff and another fan, 'What are you doing here?' [and] Plaintiff responded, 'I live here.'" (*Id.* at 3.) Further, Plaintiff now claims, "[g]iven Maraj-Petty's repeated commercial activities within New Jersey, personal jurisdiction is proper in this case." (*Id.*) He finally argues Moving "Defendants misapply *Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007), by asserting that Plaintiff's residence alone is insufficient to confer jurisdiction. However, jurisdiction is not merely based on residence but on the fact that [Moving] Defendants' statements led to harassment, doxing, and threats against Plaintiff in New Jersey" and that "Velazquez[] continued his defamatory campaign against Plaintiff as recently as February 28, 2025, demonstrating an ongoing pattern of harm directed at Plaintiff in this forum." (*Id.* at 2–3.)

Principally, a "prima facie case for the exercise of personal jurisdiction" over Moving Defendants is required as Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016). General jurisdiction "typically arises only when a corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (citing *Daimler*, 571 U.S. at 127). "With respect to a corporation, the place of incorporation and principal place of

business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (citation omitted).

As explained in *O'Connor*:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum . . . Second, the litigation must "arise out of or relate to" at least one of those activities . . . And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

*O'Connor*, 496 F.3d at 317 (internal citations omitted). Additionally, "[P]laintiff may not rely on bare pleadings alone, but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent of [D]efendant[s'] contacts with [New Jersey]." *See Sadek v. Horovitz*, Civ. A. No. 10-2187, 2013 WL 12149254, at *6 (D.N.J. Mar. 28, 2013) (citing *Metcalfe*, 566 F.3d at 330).

Plaintiff has failed to establish this Court has personal jurisdiction over Moving Defendants. There is clearly no basis for general jurisdiction over Moving Defendants as Plaintiff has failed to allege Maraj-Petty is domiciled in New Jersey nor does Plaintiff allege Pink Personality is "essentially at home in the forum State." *See Goodyear Dunlop Tires Ops.*, 564 U.S. at 919; *Daimler*, 571 U.S. at 127. In terms of specific jurisdiction, Plaintiff has not shown the Moving Defendants "'purposefully directed' [their] activities at residents of the forum" and that his claims "'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (internal citations omitted); *Metcalfe*, 566 F.3d at 334. In other words, Plaintiff "has failed to establish the requisite 'purposeful availment' necessary for a finding of specific jurisdiction." *Croat v. Mission Fine Wines, Inc.*, 2020 WL 1921955, at *4. With respect to specific jurisdiction, Plaintiff's allegations here likewise fall well short of demonstrating Moving Defendants purposefully

targeted New Jersey given their comments were on public radio station broadcasts and global platforms.

In this regard, Plaintiff's citation to *Calder v. Jones*, 465 U.S. 783 (1984) is unavailing. The *Calder* test requires Plaintiff to demonstrate:

> (1) [t]he defendant[s] committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by [him] as a result of that tort; and (3) [t]he defendant[s] expressly aimed [their] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (citing *IMO Indus.,* 155 F.3d at 265–66 (footnote omitted)). "If a plaintiff satisfies these three elements, known collectively as the 'effects test,' the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process' under our traditional analysis." *Id.* (citing *IMO Indus.,* 155 F.3d at 259). In other words, Plaintiff must establish that Moving Defendants "knew that [he] would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* (citing *IMO Indus.*, 155 F.3d at 266). Plaintiff's only assertion regarding Moving Defendants' knowledge that the alleged harm would be felt in New Jersey is because he told Maraj-Petty that he was domiciled in New Jersey. (ECF No. 30 at 3.) This is insufficient as "[Plaintiff] cannot be the only link between the defendant and the forum," instead the analysis hinges on Moving Defendants "contacts with the forum State itself, not the [Moving D]efendant[s]' contacts with persons who reside there." *Walden*, 571 U.S. at 285. As such, mere knowledge of Plaintiff's domicile is not sufficient for creating personal jurisdiction. *See Rosa*, 2024 WL 4903619, at *6 ("As the Executives have pointed out, Rosa has

not alleged direct actions by them other than knowing he resided in New Jersey and meeting with him over Google Meet since it was Twitter who employed him."). Likewise,

> mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Walden*, 571 U.S. at 290.

As Moving Defendants argue, Plaintiff's Amended Complaint does not allege any connection to New Jersey other than through Plaintiff. (*See generally* ECF No. 24.) Correspondingly, all tortious conduct asserted by Plaintiff has happened outside of the forum state. (*See generally* ECF No. 7; *see also* ECF No. 24 at 6 ("Apart from Plaintiff's alleged exclusion from a March 3, 2024, concert in Denver, all of the complained-of conduct consists of statements allegedly made by Maraj-Petty and co-Defendant [] Velazquez [] on social media outlets which are incorporated and maintain their principal places of business outside of New Jersey.").) Indeed, Plaintiff's own contention that Maraj-Petty "used a globally accessible platform" to perform the alleged defamation runs contrary to his assertion that Defendants purposefully availed themselves of the forum. (*See* ECF No. 27 at 2; *see also* ECF No. 29 at 5.) Further, the conduct allegedly causing Maraj-Petty's fanbase to interact with Plaintiff negatively can hardly amount to anyone directing their activities at New Jersey. As with the allegations against all Defendants, the only relation any fan's conduct has with New Jersey is based on Plaintiff's residency there.

Accordingly, Moving Defendants' Motion to Dismiss is **GRANTED** for lack of personal jurisdiction.[4]

---

[4] Moving Defendants have alternatively argued Plaintiff's Amended Complaint should be dismissed due to improper venue or Plaintiff's failure to state a claim. (ECF No. 24.) Typically,

## IV.    CONCLUSION

For the reasons set forth above, Moving Defendants' Motion to Dismiss (ECF No. 24) is **GRANTED**, and Plaintiff's Amended Complaint (ECF No. 7) is **DISMISSED WITHOUT PREJUDICE** as to Moving Defendants. An appropriate Order follows.

Dated:  August 25, 2025                                  */s/ Brian R. Martinotti*
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**

---

federal courts do not address the merits of a case when personal jurisdiction over the defendant is not found. *See Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 204–05 (3d Cir. 2021) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("The District Court did not resolve this dispute and instead chose to dismiss the [second amended complaint] on the merits. This was error because 'a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).'"). As such, the Court need not go further to address the parties' remaining arguments given the present dismissal for lack of personal jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382, (1937) ("Personal jurisdiction, too, is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'"); *In Re Lipitor Antitrust Litigation*, 855 F.3d 126, 151 (3d Cir. 2017) ("The District Court should have resolved the standing and personal jurisdictional arguments before dismissing . . . on the merits."); *Castillero v. Xtend Healthcare, LLC*, Civ. A. No. 22-02099, 2023 WL 8253049, at *4 (D.N.J. Nov. 29, 2023) ("Before the Court reaches the arguments as to why [plaintiff] may or may not have plausible claims, the Court must first determine if it has personal jurisdiction over [defendant] as to [plaintiff]'s claims."); *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020) ("If . . . personal jurisdiction is absent, the court is powerless to address the merits of the Rule 12(b)(6) motion."); *see also Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."). Accordingly, Moving Defendants' alternative motions are denied as moot.